



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**COURT OF WORKERS' COMPENSATION CLAIMS**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **Anne Michelle Ferguson,** | ) | **Docket No. 2019-01-0630** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Amazon.com, Inc.,** | ) | **State File No. 80845-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **American Zurich Insurance Co.,** | ) | **Judge Thomas Wyatt** |
| **Carrier.** | ) | |

---

### COMPENSATION ORDER FOR PERMANENT DISABILITY AND MEDICAL BENEFITS

---

In a Compensation Hearing held October 19, 2020, Anne Michelle Ferguson sought permanent total disability and medical benefits for complex regional pain syndrome (CRPS) allegedly caused by her compensable left-foot injury. Amazon.com, Inc. argued Ms. Ferguson is limited to benefits for a foot contusion and sought a credit for overpayment of temporary partial disability benefits.

For the reasons below, the Court holds that Ms. Ferguson has compensable CRPS and awards her permanent partial disability benefits, less a credit for overpayment of temporary benefits, and medical benefits for ongoing treatment of CRPS.

### History of Claim

Ms. Ferguson injured her left foot in October 2017 when a thirty-eight-pound door fell out of a box she was removing from a high shelf and struck her foot.

She saw panel orthopedist Dr. Ricky Hutcheson shortly after the injury. He noted left-foot bruising, numbness, swelling, and pain so severe it prevented touching. He diagnosed a contusion, prescribed medication and physical therapy, and imposed work restrictions. On February 8, 2018, he placed her at maximum medical improvement (MMI)

1

and released her without impairment or restrictions.

Ms. Ferguson initially succeeded in returning to her picker job. Her primary physician noted she was walking 15,000 steps per day at Amazon with some left-foot pain later in February. However, she returned to Dr. Hutcheson's office on May 23 reporting left-foot numbness and tingling, increased pain with weight-bearing, and recent discoloration and coldness. A nurse practitioner found coldness in her left toes and discoloration "from the midfoot down" and concluded she had "probable CRPS." On June 7, Dr. Hutcheson noted, "she has hypersensitivity and discoloration and has difficulty ambulating because of it." He diagnosed "[p]robable complex regional pain of the left foot" and referred her to foot and ankle specialist Dr. Jesse Doty. He wrote he would resume treatment of Ms. Ferguson if Dr. Doty declined to treat her.

Amazon authorized treatment by Dr. Doty, and in late June, Ms. Ferguson saw his physician assistant.[1] The physician assistant noted that she had begun experiencing increased pain after having to walk more than usual at work. He observed purplish discoloration near the toes and tenderness in the dorsal aspect of her foot. He prescribed insoles and a nerve test and limited her walking and standing to four hours per day.

Ms. Ferguson saw Dr. Doty on September 10. After considering nerve-test results, he diagnosed "peculiar nerve damage . . . unrelated to the distribution of the nerves" in her foot. He limited her walking and standing to no more than four hours per day but also told her that he intended to release her without restrictions in six weeks. Amazon took Ms. Ferguson off work based on Dr. Doty's restriction and paid weekly temporary partial disability benefits of $333.37 from September 17 to October 22.

Ms. Ferguson returned to Dr. Doty's physician assistant on November 28, reporting that she was working ten to twelve hours per day at Amazon.[2] This caused such severe foot pain that it sometimes made her fall. The physician assistant noted bruising on her arms, injected her foot, and ordered another orthotic device. He required that she take bi-hourly fifteen-minute breaks and wrote that she might need to see a neurologist.

Ms. Ferguson worked until Amazon took her off work on January 18, 2019.[3] She testified that, two days before Amazon took her off work, she had decided to take personal leave so she could be a birth coach for her daughter and undergo back and gastric bypass surgeries. Amazon paid temporary partial disability benefits from January 18 to February 21. Why Amazon started and stopped these benefits is unclear from the record.

In March 2019, Dr. Doty's physician assistant noted she underwent back surgery in

---

[1] Most of the records from Dr. Doty's office are contained in the exhibits to Dr. Hazlewood's deposition.
[2] The record is unclear whether Dr. Doty ever formally lifted the restrictions.
[3] Amazon's counsel stated that Amazon could no longer accommodate her restrictions.

January. On examination, he discovered that she walked with a foot drop. He ordered a brace and mentioned a "Dr. Alpers" in reference to treatment of the foot drop. The physician assistant stated she could return as needed. At this point, Amazon scheduled Ms. Ferguson to return to Dr. Hutcheson. She declined the appointment, arguing that Dr. Doty's treatment had not ended. Dr. Doty later provided a letter referring Ms. Ferguson back to Dr. Hutcheson.

Other than independent medical examinations with Drs. Dreskin and Hazlewood, Ms. Ferguson did not receive further care for her foot until she saw Dr. Hutcheson in August 2020. Dr. Hutcheson's report stated he would defer to Drs. Dreskin's and Doty's opinions regarding CRPS because he "does not deal with [CRPS.]" He gave Ms. Ferguson a one-percent impairment for her work injury based on left calf atrophy and released her to work with a restriction against working from a footstool.[4]

Ms. Ferguson has not worked anywhere since January 2019. Amazon approved her for long-term disability benefits, which she still receives.[5] Since last working at Amazon, Ms. Ferguson has undergone back surgery, a gastric bypass, and surgery for endometrial cancer. She is awaiting approval to undergo a second back surgery. She has not resigned from Amazon, and Amazon considers her an inactive employee. She stated she has not sought work anywhere because, after considering her skillset, she cannot think of anything she can do within her restrictions.

Ms. Ferguson testified that her foot pain is worse than her back pain, and she believes she could work if she only had back pain. She stated she cannot stand or walk for more than thirty minutes and often must stop to elevate her foot. However, she also testified that she believes she could perform receptionist and data entry work if an employer would hire her and accommodate her restrictions. Her husband and a friend testified that she is much less active now than before her injury. Her husband testified that he has observed persistent swelling, coldness, and intermittent discoloration in her foot.

The parties presented the testimony of competing board-certified pain management specialists. Dr. Stephen Dreskin testified for Ms. Ferguson, and Dr. Jeffrey Hazlewood for Amazon. Both maintain clinical practices and have instructed physicians on pain management issues, including CRPS.

Dr. Dreskin defined CRPS as a disruption, including by trauma, of the sympathetic nervous system, which controls the blood flow and temperature of body parts, including

---

[4] Amazon objected to Dr. Hutcheson's report because it was not electronically or otherwise signed. The record bears Dr. Hutcheson's name at the end and states that he dictated the note but did not edit it. The Court overruled the objection because (1) Amazon introduced a form signed by Dr. Hutcheson on August 6, the same date of the disputed report, and (2) Amazon provided identically identified records of Dr. Hutcheson to its experts, who considered them as authentic.

[5] The evidence was unclear as to which disabling conditions formed the basis of her claim for these benefits.

the foot. He explained that this disruption causes discoloration, skin changes, and hypersensitivity to the affected area. He diagnosed Ms. Ferguson with CRPS based on discoloration and coldness; left lower-extremity edema confirmed by MRI; abnormally dry and smooth skin; subtle changes to her toe nails; left-lower-extremity atrophy and weakness caused by disuse due to pain; tenderness and restricted range of foot motion; and walking with an inverted left foot due to pain.

He testified that he did not measure his physical findings. Further, he did not conduct diagnostic testing to rule out non-CRPS causes, due in large part to a limitation of resources in treating a workers' compensation patient. However, his diagnosis of CRPS considered the factors in the *AMA Guides to the Evaluation of Impairment,* 6th Edition.

Dr. Dreskin also testified that more than fifty percent of the cause of Ms. Ferguson's CRPS was her injury at Amazon. In support, he stated the work injury was to the part of the foot where she now has CRPS, and he knew of no other trauma that would account for CRPS. He rated Ms. Ferguson's impairment at eight percent but did not state when he believed she reached MMI.[6] Finally, he stated that Ms. Ferguson should be under regular care for CRPS and recommended treatment by non-opioid medication. He placed permanent restrictions on her walking, standing, climbing, and working at heights and concluded she should be able to change positions and take breaks as needed.

On the other hand, Dr. Hazlewood did not believe Ms. Ferguson's condition qualified as CRPS. Although he noted partial discoloration, hypersensitivity, and atrophy in her left foot and lower extremity, he did not observe a temperature change in her foot. He observed that she walked with an inverted left foot and foot drop not explained by either objective testing or her work injury. He testified that psychological factors might account for her findings.

Dr. Hazlewood stated that CRPS is a controversial diagnosis, and many physicians do not believe it qualifies as a medical disorder. He testified that he had read numerous articles and heard discussions at medical conferences against recognizing CRPS as a medical condition.[7] He also testified that a diagnosis of CRPS is speculative even when a physician follows proper protocol because many of the supportive findings—pain, hypersensitivity, disuse, etc.—are subjective.

Dr. Hazlewood also testified that Dr. Dreskin's CRPS diagnosis did not satisfy the *AMA Guides* diagnostic protocol because he did not make objective measurements nor use neuropsychological and other diagnostic testing to rule out other possible causes. He assigned a one-percent impairment without permanent restrictions.

---

[6] Ms. Ferguson contended that she attained MMI on the date of Dr. Dreskin's examination.
[7] Dr. Hazlewood mentioned a couple of articles during his testimony but did not elaborate on the specific findings in those articles.

Regarding vocational impairment, the parties relied on experts and stipulated to their credentials. John McKinney testified for Ms. Ferguson. After interviews and testing, he concluded that she was of average intelligence and education. He testified she had no reasonable expectation of obtaining and sustaining gainful employment in view of her self-report of disability and Dr. Dreskin's restrictions. He concluded she was 100% vocationally disabled. He conceded she would have no vocational disability if, as Dr. Hazlewood stated, she has no permanent restrictions.

For Amazon, Michael Gallagher agreed with Mr. McKinney that Ms. Ferguson had no reduction in vocational capacity if she had no restrictions. He stated that Dr. Dreskin's restrictions would limit her to sedentary positions, which comprise only ten percent of all jobs. He concluded that her intelligence, personality, and office skills would benefit her in future employment, given that she is of average intelligence and has a job history of successfully retraining from one industry to another. He placed her at 75% vocational disability based on Dr. Dreskin's restrictions.

## Findings of Fact and Conclusions of Law

### *Compensability of CRPS*

At a Compensation Hearing, Ms. Ferguson must prove all elements of her claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2019). To recover for CRPS, she must show by medical opinion that she has CRPS and her employment contributed more than fifty percent to its cause, considering all contributory causes. Tenn. Code Ann. §§ 50-6-102(14)(A)-(D).

The Court must weigh the competing opinions of Drs. Dreskin and Hazlewood to determine if Ms. Ferguson has met her burden. To do so, the Court applies the factors in *Ledford v. Mid-Georgia Courier,* 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *8 (June 4, 2018), holding that relevant factors include the qualifications of the competing experts; the information available to them; the circumstances of their examinations; and the importance of those criteria to other experts in the same field.

Here, professional qualifications do not distinguish Drs. Dreskin and Hazlewood. Both performed similar examinations with the exception that only Dr. Hazlewood made specific measurements. However, upon reviewing the rationales for their opinions, the Court holds that Dr. Dreskin's opinion that Ms. Ferguson suffers from compensable CRPS is better supported by the evidence, and thus gives greater weight to it.

Notably, Dr. Dreskin defined CRPS and then applied the definition to findings that he observed. These included discoloration and coldness; left lower-extremity edema confirmed by MRI; abnormally dry and smooth skin; subtle changes to her toe nails; left-lower-extremity atrophy and weakness caused by disuse due to pain; tenderness and

5

restricted range of foot motion; and walking with an inverted left foot due to pain. As to causation, he explained that trauma often causes CRPS, and he knew of no other trauma to her foot that could have caused CRPS.

Further, other providers corroborated the presence of the findings—discoloration, coldness, atrophy, walking with an inverted foot—used by Dr. Dreskin to support his diagnosis. The Court considers it significant that Dr. Hutcheson also thought that Ms. Ferguson's foot injury probably caused CRPS.

In contrast, Dr. Hazlewood advocated against CRPS should being recognized as a medical condition. The Court questions whether this predisposition clouded his objectivity in determining whether Ms. Ferguson has CRPS.

In giving more weight to Dr. Dreskin's diagnosis of CRPS, the Court holds that Ms. Ferguson is a credible witness. Medical records corroborated her testimony that she suffered severe left-foot pain immediately following her work injury and that she suffered other symptoms consistent with CRPS in the months that followed. Further, her attempts to work on her feet for several months after the injury bolster her credibility.

In summary, Dr. Dreskin's conclusions are based on Ms. Ferguson's consistent history and the physical findings he and other providers observed. On the other hand, Dr. Hazlewood's advocacy eroded the Court's confidence in his opinion that Ms. Ferguson does not have CRPS. Thus, the Court holds that Dr. Dreskin better explained why Ms. Ferguson continues to endure left-foot symptoms and, as such, the Court holds the preponderance of the evidence establishes that she has CRPS arising primarily out of and in the course and scope of employment.

*Date of MMI*

Determining Ms. Ferguson's awards of disability benefits requires the Court to determine the MMI date. The Supreme Court Appeals Panel held in *Ross v. Delta Indus. Coatings, Inc.,* No. W2009-01815-WC-R3-WC, 2009 Tenn. LEXIS 492, at *8 (Tenn. Workers' Comp. Panel Mar. 23, 2009), that MMI occurs when the employee "had recovered as far as the nature of his injury would permit." Factors affecting MMI include the date after which no new treatments were recommended and the injury's impact on employment stabilized. In addition, Tennessee Code Annotated section 50-6-207(1)(E), provides that an employee "is conclusively presumed to be at [MMI] when the treating physician ends all active medical treatment and the only care provided is for the treatment of pain[.]"

Here, the only MMI designation by a physician in the record was February 8, 2018, from Dr. Hutcheson. However, he gave that assessment before Ms. Ferguson reported CRPS-related findings that led to work restrictions and a referral to a specialist, who

ordered new diagnostic testing and tried different treatments. For those reasons, the Court holds that Ms. Ferguson did not attain MMI on February 8, 2018.

Instead, the Court holds the MMI date is September 10, 2018, when Dr. Doty released her to see him again as needed. By then, Ms. Ferguson had undergone testing and treatment under Dr. Doty's supervision. Treatment provided by Dr. Doty's physician assistant after September 10 simply continued previous treatment to improve her symptoms.

*Overpayment of Temporary Partial Disability Benefits*

Tennessee Code Annotated section 50-6-207(2)(C) provides that "the employer shall be given a credit against an award of permanent disability for any amount of [temporary disability benefits] paid to the employee after the date on which the workers' compensation judge determines [MMI]." Here, Amazon paid temporary partial disability benefits for nine weeks and three days after the MMI date; thus, the Court awards it a credit of $3,143.19 against the permanent partial disability award.

*Permanent Total Disability Benefits*

Ms. Ferguson seeks permanent total disability benefits, arguing that she has no reasonable expectation of employment in view of her age, education, work experience, and permanent restrictions due to CRPS. To recover these benefits, she bears the burden of proving that, due to her work injury, "she is unable to work at any job that would produce an income on the open labor market." *Prost v. City of Clarksville,* 688 S.W.2d 425, 427 (Tenn. 1985). *See also* Tenn. Code Ann. § 50-6-207(4). The Court must consider Ms. Ferguson's skills, education, age, training, local job opportunities, and the availability of work suited for someone with her disability. *Hubble v. Dyer Nursing Home,* 188 S.W.2d 525, 535-36 (Tenn. 2006).

After considering the evidence, the Court holds that Ms. Ferguson did not prove that she is permanently unable to work at a job that will bring her an income. Her CRPS restrictions do limit her to sedentary work, but she has skills, training, and experience that provide a reasonable expectation that she can perform a sedentary job. She is personable and industrious and wants to work. She has shown the ability to transition into different industries during her career, including the ability to successfully retrain within those industries. She testified that she thinks she can do jobs such as receptionist and data entry/customer service. Both vocational experts testified that these jobs exist in Ms. Ferguson's community. In making this decision, the Court considered that her age, basic education, and the remoteness of any relevant experience might present obstacles; however, they are not so severe as to warrant a holding that she is permanently and totally disabled.

Given that Ms. Ferguson is not permanently and totally disabled, the Court must now consider permanent partial disability. An employee who proves she has a compensable injury that is partially disabling is entitled to a permanent partial disability award calculated by multiplying her impairment rating by 450 weeks by the compensation rate. Tenn. Code Ann. § 50-6-207(3)(A).

Because Dr. Dreskin's eight-percent rating is the only one that considered the CRPS diagnosis, the Court holds that it is more accurate. Thus, Ms. Ferguson's original award is for thirty-six weeks at the stipulated compensation rate of $333.37, for a total of $12,001.32. After Amazon's credit, the net award is $8,858.13.

In addition to an original award, an employee may also be entitled to "increased benefits." Tennessee Code Annotated section 50-6-207(3)(B) provides,

> [i]f at the time the [original compensation period] ends the employee has not returned to work with any employer *or has returned to work and is receiving wages or a salary that is less than [100%] of the wages or salary the employee received from the employee's pre-injury employer on the date of injury*, the injured employee may file a claim for increased benefits. *If appropriate*, the injured employee's [original award] shall be increased by [applicable statutory multipliers.]

(Emphasis added.)

Ms. Ferguson's original compensation period ended May 21, 2019, and she had not worked since the previous January when Amazon sent her home due to restrictions on her foot. However, the issue is complicated by the fact that, almost simultaneously, she took personal leave that has extended to the present. The evidence showed that, even if her foot were not injured, Ms. Ferguson would have been unable to work during portions of the compensation period due to non-work-related surgeries. In fact, she received, and continues to receive, $1,500 per month in non-workers' compensation disability benefits.

In *Bain v. UTI Integrated Logistics, LLC,* No. 2018-00840-SC-WCM-WC, 2019 Tenn. LEXIS 493, at *14 (Tenn. Workers' Comp. Panel Oct. 16, 2019), the Appeals Panel held that "by including the phrase '[i]f appropriate' [in section 207(3)(B)], the legislature expressed its intent that a trial court consider all relevant factors, including the circumstances of the injured worker's ability and/or willingness to return to work in his or her disabled state" in determining entitlement to increased benefits. In addition, Tennessee Code Annotated section 50-6-102(14)(C) provides that "[a]n injury causes death, *disablement,* or the need for medical treatment *only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing*

*[the disablement], considering all causes."* (Emphasis added).

In view of this authority, the Court holds that Ms. Ferguson did not prove that her disablement since May 21, 2019, primarily arose from her employment at Amazon. Even with an uninjured foot, she would not have been gainfully employed for long periods since January 2019 as she recuperated from non-work-related surgeries for which she received long-term disability benefits.

*Medical Benefits*

Ms. Ferguson also seeks additional medical care for her CRPS. The Court looks to Tennessee Code Annotated sections 50-6-204(a)(3)(A)(ii) and (E) to resolve this issue. Section 204(a)(3)(A)(ii) allows a treating physician to make a referral for treatment. Where, as here, the employer authorizes the referral, section (a)(3)(E) provides that the referral physician "shall become the treating physician until treatment by the [referral physician] concludes and the employee has been referred back to the treating physician selected by the employee from the original panel[.]"

Here, after some initial confusion, Dr. Doty referred Ms. Ferguson back to Dr. Hutcheson. However, in his most recent treatment note, Dr. Hutcheson stated that he does not treat CRPS. For this reason, Amazon shall promptly provide a panel of specialists who treat CRPS from which Ms. Ferguson shall select an authorized treating physician.

**IT IS ORDERED AS FOLLOWS:**

1. Amazon shall pay Ms. Ferguson an initial award of permanent partial disability benefits totaling $8,858.13 after Amazon's credit of $3,143.19 for overpayment of benefits.

2. Amazon shall promptly provide Ms. Ferguson a panel of specialists who treat CRPS. She shall select a new authorized treating physician with whom Amazon shall promptly schedule an appointment.

3. The Court awards Tim Henshaw, counsel for Ms. Ferguson, an attorney's fee based on twenty percent of the award of disability benefits, plus trial preparation expenses incurred on Ms. Ferguson's behalf.

4. The Court taxes the filing fee of $150 to Amazon and/or its carrier, to be paid to the Clerk within five business days from the date this order becomes final.

5. Amazon shall prepare and file the SD-2 with the Clerk within ten business days of the date of this order under Tennessee Code Annotated section 50-6-224.

6. Unless appealed, the order shall become final thirty days after issuance.

**ENTERED October 28, 2020.**

_____
*Thomas Wyatt*

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical record: The Court considered the following filings in making its decision:

1. PBDs
2. Post-Discovery DCN
3. Employer Position Statement
4. Request for Scheduling Hearing
5. Scheduling Order
6. Joint Pre-Compensation Hearing Statement
7. Employee Pre-Trial Memorandum
8. Employer Pre-Hearing Brief

Exhibits: The Court admitted the following documentary evidence during the Compensation Hearing:

1. Transcript of the Deposition of Dr. Stephen Dreskin with attached exhibits
2. Transcript of the Deposition of Dr. Jeffrey Hazlewood with attached exhibits
3. Transcript and video of the Deposition of Judy Chastain
4. C41 Wage Statement
5. Records of Erlanger Ortho South/Dr. Jesse Doty
6. Compilation of Documents filed by Employee
   - Records of Tennessee Valley Bone and Joint/Dr. Ricky Hutcheson
   - Records of Erlanger Ortho South/Dr, Jesse Doty
   - Photograph
   - Employer's Response to Request for Production of Documents
   - Notice of Deposition
   - Report of MRI of Left Lower Extremity—December 14, 2017
   - Report of John McKinney
7. Records of Dr. Terri Brunvoll
8. Records of Dr. Prayesh Patel

9. Records of Southeast Spine/Dr. Jason Eck
10. Documentation of TPD Benefits
11. Form completed by Dr. Ricky Hutcheson
12. Report of Michael Galloway
13. CV of Michael Galloway

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on October 28, 2020.

| Name | Certified Mail | Email | Service sent to: |
|------|----------------|-------|------------------|
| Tim Henshaw<br>Employee's Attorney | | X | tim@mcmahanlawfirm.com |
| Kristen Stevenson<br>Employer's Attorney | | X | kstevenson@mijs.com<br>ssshell@mijs.com |

_____
Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**